Is he familiar friendly faces this morning? Friendly? I don't know. All signs are ready to proceed. You may proceed when you're ready, then. Good morning, Your Honors. My name is Elisa Kaliske from the State Appellate Defender's Office on behalf of David Ramirez-Lucas. David Ramirez-Lucas' two felony murder convictions rest on the predicate felony of aggravated discharge of a firearm at Cristiano Ramirez. At trial, Mr. Ramirez-Lucas testified that he fired in Cristiano's direction in self-defense, which the jury rejected at that point. However, now, in post-conviction proceedings, Mr. Ramirez-Lucas has attached the affidavits of three witnesses who attest under penalty of perjury that they were at the bar, that before Mr. Ramirez-Lucas shot in Cristiano's direction, Cristiano threw a bottle at him and pushed him. Counsel never investigated and discovered these witnesses to present. Their testimony would have corroborated Ramirez-Lucas' self-defense testimony. When did your client tell his attorney about these three witnesses? We don't know the specifics of that. His post-conviction petition states that he told counsel that witnesses in the bar could corroborate his self-defense. The question is, when did he tell him? He doesn't say in his petition, but the petition should be liberally construed since it's a first-stage petition. And at further proceedings, with the assistance of counsel, that claim could be fleshed out a little, and that point could be established clearly. But he explains that before trial, he told counsel that... Before trial? Yeah, but we don't know when exactly. Before trial, we don't know if he said just witnesses or whether he gave any specifics. And this is, I think, emblematic of the fact that this is a pro se petitioner, especially one who does not speak a great deal of English. He's not fluent, and he does not necessarily know every fact that he needs to include in the petition or in his affidavit to make out a claim. He has limited legal knowledge, and that's the sort of thing that could be fleshed out with the assistance of counsel who would recognize the elements. Based upon the pleadings, how is the trial counsel supposed to know about these three witnesses? Well, first, Mr. Ramirez-Lucas points out that he asked to go through the discovery with his attorney, which would include the police reports. And importantly, we don't know whether these witnesses are in the police reports or not. Mr. Ramirez-Lucas tried to get a copy of those reports for his post-conviction petition. The person went to a FOIA request, and he was unsuccessful. So at this stage, we don't know if the reports would have helped, but the record does not affirmatively rebut his belief that going through the police reports would help on that ground. But also, this is a bar shooting in which there are somewhere between 40 and 50 people at a bar. The record indicates that nearly everybody there is either friends of the family that owns the bar or members of that family. So interviewing those witnesses would arguably reveal the names of these people. Not everyone at the bar, but a lot of the witnesses at the trial were in fact related to the owner of the bar, correct? Right, and I believe there was testimony at trial that pretty much everybody there that night was either a family member or a friend. Obviously, Mr. Ramirez-Lucas did not fall into that category. But we don't know, again, because these are pro se affidavits and a petition, whether any of these three witnesses knew anybody else at the bar. We just don't know. We don't know how Ramirez-Lucas knew them, whether they knew the bar owner. These are all details that could be fleshed out and further shaped with the assistance of counsel. Well, that's the issue, though. You're saying we don't know a lot. We don't know what's in the police reports. We don't know whether these people were family or friends of the Madranos. We don't know at what point in time we should go forward with it to try and find out. Or we don't know. I mean, the trial judge don't know. Therefore, there's not enough here. Well, under Hodges, all that Mr. Ramirez-Lucas needed to do was identify the witness, summarize their testimony, and include some corroboration of what they would say. And that's what we have here. He's identified Il Defonso and Teo and Soto. He's got their affidavits. He's summarized what their testimony would be. The finer details of who did they know, were they in the police reports, and all of that sort of thing, I think, can be fleshed out. But because of the nature of this being a pro se petitioner, because he tried to get the police reports but could not, I think this is about the best he can do for an incarcerated person. Well, the witnesses said they didn't talk to anybody, right? Didn't talk to the police. Right. They did not talk to the police. But I think a thorough police investigation would include asking the people who did talk to the police, hey, who else was there? Because you want to find out what exactly happened, what led to this shooting. So all you have to show is a gist. Exactly. And you're not asking, you're not saying, oh, there's going to be a new trial. You're saying, I just want to go from stage one to stage two. Exactly. Exactly. So all we would be asking at this point is to go to stage two where the post-conviction counsel can look at what we've got, get these police reports, review the discovery, further interview Ramirez-Lucas and these witnesses to see where this claim actually, what there is to this claim. But at this point, the record does not rebut his claims such that we could justify summary dismissal of his petition. And these witnesses' testimony would have been helpful because he testifies in self-defense, but it's not corroborated really by any of the other witnesses. The state's witnesses at times agree that he kept trying to leave the bar. But these witnesses would have explained that the shooting that forms the predicate felony for these felony murder counts, they would have supported his self-defense testimony. The shooting into the floor? Right. That he shot at Cristiano's feet because Cristiano had pushed him and, according to these witnesses, had thrown the bottle at him. And Mr. Ramirez-Lucas testified that he was afraid he was going to be seriously injured at that point, and that's why he fired at the floor. And he did not. He specifically says at trial, I fired at the floor because I didn't want to hurt anybody. I just needed to get back so I could get out. And so these witnesses' testimony would have shed more light on the interaction between Cristiano and Mr. Ramirez-Lucas and would have provided more objective evidence of his belief in the need to use self-defense. So since it's only a first-stage petition at this point, it only has to be arguable prejudice, arguable that had counsel found these witnesses, their testimony might have made a difference to the jury. And this jury, critically, had rejected a lot of the State's case. It had rejected the State's theory that as soon as Mr. Ramirez-Lucas reentered the bomb, it's a burglary and everything flows from that. The State had rejected many of the predicate felonies that the State had charged. The jury entirely acquitted Mr. Ramirez-Lucas of shooting at Leonardo Medrano. The jury reduced the shooting of Jesus Medrano to reckless conduct. This jury was weighing the evidence very carefully and ultimately mitigated two of the first-degree intentional or knowing counts to second-degree murder and involuntary manslaughter. So this jury clearly put some weight in Mr. Ramirez-Lucas' testimony that he was acting in self-defense. And the testimony from three witnesses to support that, to go to the aggravated discharge of the firearm, could easily have made a difference to this jury. So I think we've shown at least arguable prejudice, which at this stage of proceedings is all that we need to show. We don't need to show that ultimately the jury definitely would have reached a different verdict, just that it could have made a difference to them. And let me make one last point and then I'll sit down. The State's brief calls this evidence cumulative, but evidence would only be cumulative if it added nothing to what is before the jury. And this evidence would not have been cumulative because, as I just mentioned, it would have supported his self-defense testimony, provided corroboration for testimony that was otherwise unsupported. It would have undercut the State's theory of the case, and it would have added no details to the interaction before this jury. And so we cannot say that just because they all would have been testifying about the shooting that it would have been cumulative, but rather that this would have gone to the ultimate question before the jury, whether Mr. Ramirez-Lucas had a reason to fear imminent death or great bodily harm from Cristiano Ramirez. And I believe my brief goes into some detail about the State argues in its brief that this would have contradicted Mr. Ramirez-Lucas' testimony at trial because he did not testify that Cristiano threw the bottle at him. And as I explain in my brief, I think that ignores a couple of important things about this case. And the first is the sheer chaos that was this shooting in the bar. There are so many witnesses. There are so many different perspectives. The State's witnesses themselves could not agree on some of the way that this shooting unfolded. For instance, Nydia Angeles said that Thomas Mora was shot before Leonardo Medrano, which the other witnesses contradicted. The witnesses couldn't agree on whether Thomas Mora had a bar stool during his confrontation with Mr. Ramirez-Lucas. And most importantly, Cristiano and Antonio Ramirez could not even agree if Mr. Ramirez-Lucas shot at their feet. If they could not remember that, I think that speaks really to the chaos of this shooting. And so I don't think, given that chaos, the omission of that one detail would necessarily mean that these witnesses' testimony would add nothing to the jury. And as I discuss in my brief as well, Mr. Ramirez-Lucas had been drinking that night and then sustained a pretty significant beating. When the paramedics arrived, he was unresponsive to any kind of stimuli. He arrives in the emergency room on mechanical ventilation. He's put in a drug-induced coma, and the police aren't even allowed to talk to him for four days because he's that seriously injured. So given the chaos of the shooting, the fact that he had been drinking, and then his significant injuries, I think the omission of this one detail is not necessarily surprising and would not, at this point, justify summary dismissal of the petition. I think it's just another thing that the jury would have to weigh in assessing the witness' testimony. Regarding the prejudice or the performance fraud of Strickland, you made a comment earlier that the record does not rebut the defendant's claims. Right. Doesn't the record have to support the defendant's claims? I mean, is it enough that I can make a claim in a post-conviction petition that's not rebutted by the record? A summary dismissal is justified when the record rebuts the defendant's claim. For instance, if a defendant says, I had a jury trial, and he pled guilty, something like that, it affirmatively rebuts the claim. But since it's just a gist of a claim standard, all we're looking at is whether the record rebuts that claim. Let me fine-tune the question a little bit. The issue here really is whether it's arguable that counsel could have found these three witnesses had there been an adequate investigation. Correct. Correct. All right. What in the record supports that it's at least arguable that other – I mean, you've indicated that there were 30 or 40, 40 or 50 people there. But, again, I just get back to how is defense counsel supposed to know that these three people exist? Because there's nothing in their affidavit saying, I'm a cousin of the Madronos. Right. You know, there's nothing in the affidavits talking about people who knew that they were there. The only thing in there is that they basically fled the scene because he didn't want to get involved. Right. Well, first, we – as I mentioned, we don't know if they knew the Madronos or anything, and that's the sort of thing that could be flushed out with the assistance of counsel at the second stage. It may well be that they were friends of one of the other people at the bar, but we don't know it. And it's – you know, I think they're giving an affidavit. They don't necessarily know what's critical to include. But, more importantly, I think here we have at least a couple of reasons to believe that it's arguable that counsel could have found these witnesses. First is the police reports. And, again, that's something that – you know, the record does not affirmatively rebut that these witnesses are in the police reports. That's – Mr. Amirzluk has tried to get them for the petition. He was unsuccessful. With the assistance of counsel, that could be flushed out and shaped down the line. And, again, we have, you know, all these people in the bar. It's this big party going on. Interviewing the witnesses who did talk to the police, I think it is at least arguable that one of them could mention that they saw these other people there. I think at this stage of proceedings, when all we are asking is for remand for second stage, where the claim can be further developed and flushed out and supported, I think it is at least arguable that counsel could have found these witnesses with further investigation. Does the court have no further questions? We have a chance for a remand. Thank you. Good morning, Your Honors. Good morning. Victoria Joseph for the people of the state of Illinois. May it please the court? Counsel? What we're looking at in an ineffective assistance of counsel claim, a failure to investigate, is looking at the failure to make a reasonable investigation. What counsel is asking here, the people maintain goes beyond a reasonable investigation. We have three affidavits from people, as Your Honors pointed out, that indicated they did not tell the police anything after this event. We have testimony ranging from there were 30 to 50 people there to quite a lot, quite a few. We don't have exact numbers of people there. So a reasonable investigation, where do we draw the line? Do we have an event where somebody says there were 1,000 people in attendance who may have seen? Is it then reasonable that counsel has to go find 1,000 people? Is it reasonable that you have to find 50 people that may have been in attendance? The people maintain it is not, and no case cited by the defendant in their brief discusses the failure to investigate unknown witnesses. Do we know whether or not the defendant in this case told his attorney about these witnesses? I do not recall any allegations where the defendant mentioned that there were these three people that he should go investigate. Did we find that out perhaps at the second stage? Of course we could, Your Honor, but at this point, there is nothing. So you would submit it's not arguable. It's not arguable to show a claim of ineffective assistance of counsel for failure to investigate three completely unknown witnesses, where the witnesses themselves indicated they did not tell anybody of their existence. They did not come forward until their affidavits are dated seven years after the offense. There is nothing in there that they even contacted the defendant before that time. And while he has a minimal amount of pleading to show at the first stage, there is no case law that's supporting unknown witnesses. The only case that would come close, and it did not decide this issue, would be Delton, which was a first stage dismissal, but that was dismissed because there was absolutely nothing attached to support the claims. There was no affidavit. It just was a conclusory statement that they failed to investigate all possible witnesses but didn't identify a specific one. We don't know at the point where you put forward a specific one that had never been identified before that point whether the court would then find an arguable claim of failure to investigate either. Are these three people named in the police reports? I do not have copies of the police reports. I do not know if they were named. All that we have is the affidavit saying that they did not speak to police. So they did not speak to police, so their statements were obviously not recorded to the police. Whether they were identified as being in attendance, I am unaware, Your Honor. Would we find that out at the second stage? That could be something you do find out at the second stage. But at this stage you still have to make an arguable claim of ineffective assistance of counsel, which the people do not believe the defendant has opened the door to because there is nothing in the pleading that allows an arguable claim for ineffective assistance of counsel of unknown persons at this point. Out of all the estimates of how many people were there, what's the greatest number, 50? I think 50. That was Jesus, Jr., I believe, said about 50. There were two, Nicole Beard and Leonardo both said 30 to 40. Jose Ibarra was a lot of people near the pool table. He just said approximately where they were there. And then one of the officers who arrived said there were quite a few. So there's no specific number. There were people in the kitchen too, I think. There were people all over the place, Your Honor. And at this point, unless you had bouncers at the door counting the number of people who came and went, to identify a specific number at any given time at the point of the shooting in this public bar would also be difficult to estimate. I don't think it was that type of bar where you had a bouncer. There's nothing to indicate that there was. So you're talking estimates from different people at different times. It was an open bar. It was not a closed party. Obviously the defendant was able to attend. This wasn't a closed event. This was a public place where people came and went. And to claim that counsel failed to investigate three people that there's no allegation that he even had knowledge of is not an arguable claim. Did counsel investigate, to your knowledge, anybody who could bolster defensive self-defense? I do not know the answer to that, Your Honor. However, there were cross-examinations done of the witnesses where you have a person like Nicole Beard who on cross-examination that did come out that she testified that the defendant did not shoot a gun until people rushed him, which is partially cumulative of the affidavits, which also indicate that fact. So there was cross-examination as far as trying to get to the order of the events that took place. At trial. At trial. Cross-examination. Cross-examination. That is correct, Your Honor. And as far as the people maintain that the affidavits do contradict the defendant on Christiano. Does that really matter, though? I mean, I think I understand where Your Honor is going as far as it is a matter of credibility. It does come down to a matter of credibility, which we cannot decide at the first stage. But it is a factor that the – I don't believe the trial or the post-conviction judge mentioned the contradiction. I believe he just mentioned the cumulative nature of the testimony. Well, I think the defense cites to the de Maglia case where it talks about conflicting opinions. Yes. And the judge should bar you from going to a second stage or first stage post-conviction petition. That is correct. How do you distinguish that case from this case? As far as – no, the judge could not make a credibility determination at this point. And as I said, Your Honor, I don't believe the post-conviction judge mentioned that they were contradictory. That was something that we argued in the brief. He, I believe, only said that they were cumulative of other witnesses and the defendant's testimony. So as far as that goes, I do respect that that is a credibility determination that is made at a later stage. Are there any other questions? No questions. Thank you. Thank you. We ask that you affirm the summary dismissal of the post-conviction petition. Thank you. Just a few quick points, Your Honor. First of all, the State analogizes this case somewhat to Delton in which you have the defendant's petition that says simply, somebody must have seen this crime. And no supporting affidavits, nothing to establish that anybody actually did witness the crime. Which is completely distinct from this case in which we have three Afghans saying under penalty of perjury, I was there, I saw the crime, this is what I saw. How would the defense attorney have known about these three? I think that goes to the heart of it. The defense attorney could have known about them first by looking at the police reports, second by interviewing the witnesses who were there and asking them, who else did you see? Did you see anybody else? Tell me everybody you saw who was there. Which is probably the sort of thing that a thorough police investigation would involve as well. And so I think the police reports would be helpful in that as well. Because undoubtedly the police or defense counsel can ask this sort of question about who was there. Tell me everybody who was there. Because this is a case where... And how else would counsel know? And he also would need to, if it came to it, he could go to the bar, put up signs. He could do some further investigation. So it's your position that you have nothing where you can point to defendant having told him about these three witnesses? Defendant says in his petition that he told his attorney that there were people at the bar who could corroborate a self-defense. He does not name them by name. But when you have that allegation that I told my attorney other people can back this up, plus you've got the need to go to the police reports to interview the witnesses. Now, this is a case in which the defendant is asserting self-defense. And you need witnesses to corroborate that, if you can get that. So here's my question. I mean, what's the takeaway? Let's say we rule in your favor. What's the takeaway from this case? Are we saying that any time there's an event witnessed by 50 people, counsel is ineffective unless he interviews all 50? No, no. We're saying it would be instead that in this case, defendant has raised an arguable claim that counsel was ineffective, where you have this group of, you know, 30 to 50 people, most of whom know each other, and you've got, you know, you can, this is a group where most of the people know each other. It's 40 to 50, not, you know, 100 or 1,000, like the state points out. And all we're saying is that this makes an arguable claim that counsel should have investigated further, not that counsel definitively was, because this is a claim that would need to be fleshed out further in second-stage proceedings. And with respect to the state's point that the witnesses don't say how they knew Mr. Ramirez-Lucas and he doesn't say how he found them, that is, again, something that with the assistance of counsel, these affidavits can be further clarified, because we have a pro se defendant and these three witnesses who are doing their best to come up with their affidavits about what they know. They don't necessarily realize that would be a helpful thing to include in the affidavits. The affidavits explain that they saw a news story after Mr. Ramirez-Lucas was convicted, and that's when they came forward, but we just don't know how else they knew him. And that's, this is where the need for counsel to help shape this claim, to help it fully become a clear claim, is necessary. Well, there are plenty of cases like that. I mean, where if counsel was put in, the petition would be better in the second stage. Sure, sure. I mean, what is the issue here? The issue here is looking at this petition that was presented before the trial judge. Did the trial judge err in dismissing it? Yes. The judge did err in dismissing it. And I agree it's not whether counsel could have made this petition better at the first stage. I'm merely saying that with respect to the point about how did these, how did these affidavits know Mr. Ramirez-Lucas and vice versa? That's the sort of thing that should be helpful for. Well, it would be helpful, but it also, again, what's in the affidavit is there's no relation whatsoever between the defendant and these three witnesses. There's no relation put in there between these three witnesses in the bar, these three witnesses in any Medrano. Right. Nothing. Right. These people were, we just don't know who they are. Right. But we also do not know that they don't have a relation to anybody. And that's why the claim needs to be fleshed out further. Would you agree that this case is like right smack dab in the middle between Hodges and Delton? I think it is closer to Hodges than Delton because Delton is so, is so wildly speculative about someone. Hodges is so specific as to how the defendant knew those three people. Right. He told his client about one of them and he went to the place with the other two. Right. And the lawyer told the lawyer. Told the lawyer. Right. Right. But I think this is a case that is clear, closer to Hodges than Delton because we have identified these three witnesses, we have their affidavits, we have summaries of their testimony. That puts us significantly closer to Hodges than it does to Delton where you just have someone must have seen this. And my last point is simply that with respect to the idea that counsel cross-examined the state witnesses so that would suffice to bring out a self-defense claim, I would submit that's really not the same as presenting additional witnesses who, since we don't know anything about how they're related to anybody else here, arguably are completely neutral witnesses. They're not members of the family that owns the bar that was also being sued for the shooting. They're not the defendant who's obviously, the state would say, have an interest to say it was all self-defense. These witnesses would have been very, very helpful to support this case, more so than simply cross-examining the bartender. And finally, the judge in dismissing referred to the affidavits as identical, which I would submit is essentially a credibility determination. And with respect to Hodges, it's very similar to what the judge, the Illinois Supreme Court noted in Hodges that the affidavits said essentially the same thing. So I think the affidavits here and defendant's petition make an arguable claim that counsel is ineffective for failing to thoroughly investigate this case, and we would ask you to reverse the remand for second stage proceedings. Thank you. Then thank you very much. Thank both counsel for their arguments, and we will be adjourned for the day.